**Albert Leon WILLIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 75–1669.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1975.

Decided Feb. 27, 1976.

Rehearing Denied April 7, 1976.

Ellis Olkon, Minneapolis, Minn., for appellant.

Mel I. Dickstein, Asst. U. S. Atty., Minneapolis, Minn., Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

Following a jury trial, Albert Leon Willis was convicted of knowingly and intentionally distributing heroin, a schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He received a sentence of five years' imprisonment to be followed by a special parole term of three years. Willis did not dispute the fact of distribution but relied upon entrapment as a defense. On this appeal, he contends that the district court erred (1) in declining to give the entrapment instruction submitted as a request by the appellant; (2) in failing to dismiss the indictment on the basis that entrapment had been established as a matter of law; and (3) in instructing the jury in response to jury questions submitted to the court during deliberations. We reject these contentions and affirm the conviction.

Willis does not dispute the circumstances surrounding the actual sale. On Friday, January 10, 1975, Willis met with special agent Donald Bloch of the Drug Enforcement Administration and Gary Vivone, an informer, and Willis sold Bloch three tinfoil packages containing about an ounce of heroin for $1,600. An arrest followed shortly thereafter.

The circumstances during the week preceding the sale give rise to appellant's assertion of the entrapment defense. The informer, Vivone, who was then cooperating with drug enforcement agents, including Bloch, met Willis by chance. During this meeting Willis smoked part of a bowl of marijuana which a third person had been smoking. On this occasion, Willis asked Vivone whether he had any marijuana for sale. Vivone told Willis that he did not sell marijuana but that he was a part of a large organization which sold heroin and cocaine. Wil-

lis indicated interest in becoming a drug distributor for the organization.

As a result of this first contact, Vivone transmitted this information to agent Bloch and the two of them had other meetings with Willis. The testimony is undisputed that during these meetings Vivone sought to interest Willis in becoming a member of a drug distributing organization, which, of course, was mythical, with the understanding that Willis would be given an assigned territory to distribute drugs in the black community of Minneapolis, Minnesota, and in other cities, but that Willis would have to demonstrate that he (Willis) was not affiliated with any police organization by selling heroin to the "organization." Willis had earlier displayed four or five thousand dollars in one hundred dollar bills to Vivone at their first meeting and indicated he had access to drug outlets in Omaha and Des Moines. He told Vivone he had money to reinvest because he had just come from a "big deal."

At a meeting at the Willis residence on January 7, 1975, in the presence of special agent Bloch, Vivone produced a white powder which he represented to be cocaine. In fact, the white powder was lidocaine, a prescription drug, but not a controlled substance. Lidocaine, when sniffed, produces a "numbing" effect in the nostrils similar to cocaine. The lido-caine powder was distributed to some female friends of Willis, who were at Willis' home on that occasion. During these meetings, Willis indicated that he could obtain heroin but he did not have a source of supply for high quality heroin such as could be provided by Bloch and Vivone. As a result of inducements to Willis, particularly by Vivone, Willis agreed to obtain and sell heroin to Bloch on January 10th. As we have noted, this transaction provided the basis for this prosecution.

According to Vivone's testimony and that of Bloch, Willis became a willing participant in the arrangements for him to join the mythical drug distributing organization and showed his good faith by selling heroin to Vivone and Bloch on January 10th. Willis, however, contended that he wanted to withdraw from the arrangements, but that Vivone threatened him with possible violent bodily harm and otherwise coerced him to go through with the sale of the heroin here in question.

The district court instructed the jury on the issue of entrapment.[1] Willis, however, requested an instruction which bifurcates the entrapment defense into elements of inducement and propensity and places the burden of proving inducement upon the defendant and the burden of proving propensity upon the Government. *See United States v. Braver,* 450

---

1. That instruction read as follows:

· The defendant Willis claims with respect to the charge in the Indictment that he was the victim of entrapment as to the offense charged.

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is not entrapment. For example, when a person is engaged in the illicit sale of narcotics, it is not entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such a person.

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant Willis was ready and willing to commit the crime charged in the Indictment, whenever opportunity was afforded, and that Government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant Willis had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the Government, then it is your duty to find him not guilty.

F.2d 799 (2d Cir. 1971), *cert. denied,* 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 569 (1972).[2]

During its deliberations, the jury, on Saturday, July 26, 1975, presented two questions to the court. The first question inquired whether an informer that expects a gratuity for his actions is considered to be an officer or agent. A second question inquired whether a verdict can be changed if it was once made but not given to the court. The district judge responded affirmatively to both questions and advised that the clerk would prepare new verdict forms and deliver those forms to the jury. The court added the following comment at the prosecutor's request:

> You may consider from the evidence also, members of the jury, at what point in time the informer became an officer or agent of the Government.

Willis now objects to that additional response.

About two hours later, the jury again asked the court to answer two questions. The first inquired whether lidocaine was a prohibited drug and further requested a definition of prohibited drugs. The court declined to answer that question but referred the jury to the testimony in the case and of their recollection of the testimony relating to lidocaine. The jury also asked for a second reading of the entrapment instruction and the court responded by rereading this instruction.

With this background, we turn to the contentions made by Willis.

▬ 1) We find no merit to the attack on the entrapment instruction. The instruction was appropriate, *United States v. Weber,* 518 F.2d 987 (8th Cir. 1975); *United States v. Pollard,* 483 F.2d 929 (8th Cir. 1973); *United States v. Dawson,* 467 F.2d 668 (8th Cir. 1972); *United States v. Brown,* 453 F.2d 101 (8th Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *United States v. Haley,* 452 F.2d 398 (8th Cir. 1971), *cert. denied,* 405 U.S. 977, 92 S.Ct. 1205, 38 L.Ed.2d 97 (1972); *see* Devitt & Blackmar, *Federal Jury Practice and Instructions,* § 13.13 (2d ed. 1970), and Willis made no objection to that instruction. The record shows that Willis' counsel represented to the court that "We would have preferred instruction No. 1, as amended, to the entrapment instruction given." Such comment did not constitute an objection to the instruction within the purview of Fed.R.Crim.P. 30. That rule, in part, provides:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Accordingly, Willis' attack on the entrapment instruction is without merit.

▬ 2) Willis claims that entrapment existed in this case as a matter of law by reason of the Government's outrageous conduct. The Government's testimony indicated that Willis was ready, willing, and able to join the mythical organization for the purposes of engaging in the distribution of narcotics. While the informer may have induced

---

**2.** Willis requested the following instruction:

> The defendant asserts that he was a victim of entrapment as to the offense charged in the indictment.
>
> The question of entrapment involves two issues. The first issue is whether the defendant was led or induced to commit the crime by anyone acting for the government. That is, did the government initiate the criminal transaction? On this issue the defendant has the burden of proof. He does not have to prove it beyond a reasonable doubt but he must prove it by a fair preponderance of the evidence. That is, he must satisfy

> you that it is more likely than not that the government initiated the criminal transaction involved in this case. If you do not find such inducement then there was no entrapment, but if you do find such inducement then you must consider the second issue.
>
> The second issue is whether the defendant was ready and willing to commit the crime without persuasion. This is sometimes expressed as an issue of whether he had a propensity to commit the crime. On this issue the government has the burden of proof and it must prove it beyond a reasonable doubt.

Willis to provide the heroin and sell it to Bloch for $1,600 as a token of his good faith and probity as a potential narcotics dealer, this inducement does not show outrageous conduct of the Government as to constitute entrapment as a matter of law. In *United States v. Russell,* 411 U.S. 423, 435–36, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973), the court noted:

> Nor will the mere fact of deceit defeat a prosecution, *see, e. g., Lewis v. United States,* 385 U.S. 206, 208–209, 87 S.Ct. 424, 425–427, 17 L.Ed.2d 312 (1966), for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.

*See United States v. Waskow,* 519 F.2d 1345 (8th Cir. 1975); *United States v. Hampton,* 507 F.2d 832 (8th Cir. 1974), *cert. granted,* 420 U.S. 1003, 95 S.Ct. 1445 (1975).

The Government produced evidence showing that Willis made the first approach to engage in the illegal sale of narcotics by displaying a large sum of money to Vivone and relating that he had outlets for drugs in Omaha and Des Moines. Although Willis contended that he ultimately was coerced into supplying the narcotics to Bloch and Vivone, the jury was free to disbelieve his version of the transaction. In determining whether Government conduct is outrageous, it is well to note that "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *United States v. Russell, supra,* 411 U.S. at 429, 93 S.Ct. at 1641, quoting *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Taking the record as a whole, we think the comment in *United States v. Russell* is appropriate:

> The law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth

Amendment. [*United States v. Russell, supra,* 411 U.S. at 432, 93 S.Ct. at 1643.]

3) Finally, we reject the contention that reversal is mandated by reason of the court's instructions to the deliberating jury. Those instructions were in no way improper, nor does appellant-Willis' brief demonstrate any such impropriety.

The record establishes that Willis received a fair trial; overwhelming evidence established his guilt. The jury considered and rejected the entrapment defense under proper instructions.

The conviction is affirmed.